**Electronically Filed
Intermediate Court of Appeals
CAAP-24-0000074
03-JUL-2024
03:19 PM
Dkt. 96 ORD**

NO. CAAP-24-0000074

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I

FRIENDS OF HA'IKŪ STAIRS, a 501(c)(3) nonprofit corporation;
DR. KATRENA KENNEDY, an individual;
RANDALL KENNEDY, an individual;
DONALD KAMALANI MAIWA PUA III, an individual;
BILL SAGER, an individual; ERNEST SHIH, an individual; and
RICHARD TUGGLE, an individual, Plaintiffs-Appellants, v.
CITY AND COUNTY OF HONOLULU, Defendant-Appellee

APPEAL FROM THE CIRCUIT COURT OF THE FIRST CIRCUIT
(CIVIL NO. 1CCV-23-0001022)

ORDER GRANTING IN PART MOTION FOR INJUNCTION PENDING APPEAL
(By: Leonard, Acting Chief Judge and McCullen, J.;
with Hiraoka, J., concurring in part and dissenting in part)

On June 10, 2024, Plaintiffs-Appellants Friends of Ha'ikū Stairs, Dr. Katrena Kennedy, Randall Kennedy, Donald Kamalani Maiwa Pua III, Bill Sager, Ernest Shih and Richard Tuggle (together, **Friends**) filed an Emergency Motion for Injunction Pending Appeal To Prevent Imminent and Irreparable Destruction of The Ha'ikū Stairs (**Motion for Injunction Pending Appeal**). On June 18, 2024, Defendant-Appellee City and County of Honolulu (**City**) filed a memorandum in opposition to the Motion for Injunction Pending Appeal, and this court held a hearing on June 26, 2024.

The Motion for Injunction Pending Appeal is granted in part, for the reasons and to the extent set forth herein.

Friends principally argue that their strong showing of irreparable harm warrants the issuance of an order enjoining the City (and others) from, *inter alia*, demolishing the Haʻikū Stairs and/or Moanalua Saddle Stairs pending a decision on the merits of this appeal. Friends also argue that they have a likelihood of success on the merits of this appeal, and in further proceedings following remand, based on new evidence and arguments, and new declarations filed with the Motion for Injunction Pending Appeal. Finally, Friends argue that important public interests would be protected by granting the requested relief.

The sole issue before this court is whether Friends should be granted an injunction pending the review of Friends' appeal by a merits panel and a decision on the merits. This issue is governed by the Hawaiʻi Rules of Appellate Procedure (**HRAP**) Rule 8, which provides in relevant part:

> **Rule 8. STAYS, SUPERSEDEAS BONDS, OR INJUNCTIONS PENDING APPEAL.**
>
> **(a) Motions for stay, supersedeas bond or injunction in the appellate courts.** A motion for stay of the judgment or order in a civil appeal, or for approval of a supersedeas bond, or for an order suspending, modifying, restoring, or granting an injunction during the pendency of an appeal shall ordinarily be made in the first instance to the court or agency appealed from.
>
> A motion for such relief on an appeal may be made to the appellate court before which the appeal is pending or to a judge thereof, but, if the appeal is from a court, the motion shall show that application to the court appealed from for the relief sought is not practicable, or that the court appealed from has denied an application, or has failed to afford the relief the applicant requested, with the reasons given by the court appealed from for its action. The motion shall also show the reasons for the relief requested and the facts relied upon, and, if the facts are subject to dispute, the motion shall be supported by affidavits, declarations, or other sworn statements or copies thereof. With the motion shall be filed such copies of parts of the record as are relevant. Notice of the

2

motion shall be given to all parties.  The motion shall be filed with the appellate clerk and should ordinarily be considered by the appellate court, but in exceptional cases where such procedure would be impracticable due to the requirements of time, the application may be made to and considered by a single judge or justice of the court.  If the motion for such relief is from an agency, the motion shall comply with statutory requirements, if any.

This court has previously explained the standard for granting injunctive relief pending appeal as follows:

> Generally, the standard for a preliminary injunction is: (1) whether the moving party has shown that it is likely to succeed on the merits; (2) whether the balance of irreparable harms favors the issuance of an injunction; and (3) whether the public interest supports granting such an injunction.  See, e.g., Office of Hawaiian Affairs v. Hous. and Cmty. Dev. Corp. of Haw., 117 Hawaiʻi 174, 212, 177 P.3d 884, 922 (2008).  This standard has been most frequently applied to a trial court's consideration of a motion for preliminary injunction or an appellate court's review of a trial court's decision on such motion.
>
> It appears, however, that a stronger showing on the merits may be required when a party seeks an injunction pending appeal.  See, e.g., Life of the Land, Inc. v. City Council of the City and County of Honolulu, 60 Haw. 446, 447, 592 P.2d 26, 27 (1979) ("In order for an appellant to obtain an injunction pending appeal, there must be a showing that he is threatened with irreparable injury and that there is **substantial likelihood** that he will prevail on the merits of his appeal.") (emphasis added); Life of the Land v. Ariyoshi, 59 Haw. 156, 165, 577 P.2d 1116, 1122 (1978) (holding that appellant had failed to establish a prima facie case on the merits, "much less a showing of substantial likelihood of success"); MDG Supply, Inc. v. Diversified Inv., Inc., 51 Haw. 480, 482, 463 P.2d 530, 532 (1969) ("[T]here must be a showing that appellant is threatened with irreparable injury and that there is great likelihood, approaching near certainty, that he will prevail.") (citations omitted). . . .
>
> We recognize, too, that, if a court is able to conclude that a prima facie case has been made in support of the movant's position on the merits of a case, the weight attached to the various elements may vary, and a strong showing of irreparable harm may reduce the weight given to any lack of likelihood of success on the merits. See, e.g., Office of Hawaiian Affairs, 117 Hawaiʻi at 211–12, 177 P.3d at 921–22 ("[T]he more the balance of irreparable damage favors issuance of the injunction, the less the party seeking the injunction has to show the likelihood of his success on the merits.") (citation omitted); Life of the Land v. Ariyoshi, 59 Haw. at 165, 577 P.2d at 1122 ("We recognize that the weight to be attached to the various elements of the test may vary, and that a strong showing of irreparable harm may reduce the weight given to any lack of likelihood of success on the merits.") (citation omitted). The opposite proposition is, of course, true as well.  A strong showing on the merits may reduce, but not eliminate, the moving party's burden on the issues of irreparable harm and public interest. See Penn v. Transp. Lease Haw., Ltd., 2 Haw. App. 272, 276, 630 P.2d 646, 650 (1981) ("[T]he

3

> greater the probability that the party seeking the
> injunction is likely to prevail on the merits, the less he
> has to show that the balance of irreparable damage favors
> issuance of the injunction.").

Stop Rail Now v. DeCosta, 120 Hawaiʻi 238, 243-44, 203 P.3d 658, 663-64 (App. 2008).

Thus, an appellant-movant seeking an injunction pending appeal must, at a minimum, demonstrate that a *prima facie* case has been made in support of their position on the merits of the appeal, even if a strong showing of irreparable harm may reduce the weight given to any lack of likelihood to prevail on the merits.

Here, Friends filed a Complaint in the Circuit Court of the First Circuit (**Circuit Court**) seeking declaratory and injunctive relief under the Hawaiʻi Environmental Policy Act (**HEPA**), Hawaii Revised Statutes (**HRS**) chapter 343, and further relief based on claims for estoppel and alleged violations of their rights under article XI, section 9 of the Hawaiʻi Constitution and due process violations.[1] Friends filed a First Amended Complaint (**Amended Complaint**) adding a claim for "improper segmentation" based on Hawaiʻi Administrative Rules (**HAR**) § 11-200.1-10. The City filed a motion to dismiss and/or for summary judgment, which was granted on the grounds that there were no genuine issues of material fact and the City was entitled to judgment as a matter of law. The Circuit Court entered a

---

[1] Friends make no arguments concerning the merits of their article XI, section 9 and due process claims. Friends mention (in a single sentence in a footnote) that they contend that the City must conduct a new EIS, but make no argument in support of that contention. Thus, such arguments are waived for the purposes of this Motion.

4

final judgment in favor of the City, and Friends timely filed a notice of appeal.

On May 31, 2024, Friends filed a motion for injunction pending appeal in the Circuit Court. In a declaration filed with the Motion for Injunction Pending Appeal (in this court), Friends' counsel avers (and the City does not dispute) that at a June 7, 2024 status conference, the Circuit Court informed the parties that it did not have jurisdiction pursuant to Hawaiʻi Rules of Civil Procedure (**HRCP**) Rule 62 to rule on the motion. The Circuit Court motion was then withdrawn. We decline to address the issue of the Circuit Court's jurisdiction. However, we conclude that Friends have made a sufficient showing that further application to the Circuit Court for the relief sought herein is not practicable.

In this light, we apply the three-part test from Stop Rail Now to the motion for injunction pending appeal.

I.    LIKELIHOOD OF SUCCESS ON THE MERITS

To be clear, this is not a decision on the merits of Friends' appeal. This appeal is not yet fully briefed, and this is a ruling on a preliminary motion. Accordingly, we address the issue of Friends' likelihood of success on the merits in this appeal on narrow grounds.

Our view of Friends' likelihood to prevail on the merits of this appeal is guided by the standard of review applicable to an appeal from an order granting summary judgment. As the Hawaiʻi Supreme Court has often held, we review summary judgments *de novo*. See Kamaka v. Goodsill Anderson Quinn &

Stifel, 117 Hawaiʻi 92, 104, 176 P.3d 91, 103 (2008).  Under HRCP Rule 56(c), the Circuit Court shall grant a motion for summary judgment when the moving party shows that:  (1) there is no genuine issue regarding any material fact; and (2) it is entitled to judgment as a matter of law.  Id.  We view the evidence in the light most favorable to the non-moving party; factual inferences are made in favor of the non-moving party.  Id.

"In cases of public importance, a circuit court should grant a motion for summary judgment 'sparingly, and never on limited and indefinite factual foundations.'"  Kilakila ʻO Haleakala v. Univ. of Haw., 138 Hawaiʻi 364, 375, 382 P.3d 176, 187 (2016) (quoting Molokai Homesteaders Coop. Ass'n v. Cobb, 63 Haw. 453, 458, 629 P.2d 1134, 1139 (1981)).  However, if there is no genuine issue as to any material fact and the moving party clearly demonstrates that they should prevail as a matter of law, then summary judgment is proper.  Id.

In the Amended Complaint, Friends allege, *inter alia*, that the City violated HEPA by failing to prepare a Supplemental Environmental Impact Statement (**SEIS**).  Friends challenge to the City's reliance on the "January 2020 Haʻikū Stairs Study:  Final Environmental Impact Statement" (**FEIS**) is grounded in allegations that substantial changes have occurred since the completion of the FEIS, that these changes may have a significant effect on the environment, and therefore an SEIS is required pursuant to HAR § 11-200.1-30.

This rule provides in relevant part:

> **§ 11-200.1-30 Supplemental environmental impact statements.**  (a) An EIS that is accepted with respect to a particular action is usually qualified by the size, scope,

6

location, intensity, use, and timing of the action, among other things.  An EIS that is accepted with respect to a particular action shall satisfy the requirements of this chapter and <u>no supplemental EIS for that proposed action shall be required, to the extent that the action has not changed substantively in size, scope, intensity, use, location, or timing,</u> **among other things**.  <u>If there is **any** change in any of these characteristics which may have a significant effect, the original statement that was changed shall no longer be valid because an essentially different action would be under consideration and a supplemental EIS shall be prepared</u> and reviewed as provided by this chapter.  As long as there is no change in a proposed action resulting in individual or cumulative impacts not originally disclosed, the EIS associated with that action shall be deemed to comply with this chapter.

(b)  The accepting authority or approving agency in coordination with the original accepting authority shall be responsible for determining whether a supplemental EIS is required.  This determination will be submitted to the office for publication in the periodic bulletin.  Proposing agencies or applicants shall prepare for public review supplemental EISs whenever the proposed action for which an EIS was accepted has been modified to the extent that new or different environmental impacts are anticipated.  **<u>A supplemental EIS shall be warranted when the scope of an action has been substantially increased</u>, <u>when the intensity of environmental impacts will be increased</u>, <u>when the mitigating measures originally planned will not be implemented</u>, or <u>where new circumstances or evidence have brought to light different or likely increased environmental impacts not previously dealt with</u>**.

(Emphasis added).

For the purposes of this motion, we focus on HAR § 11-200.1-30(b), which provides that an SEIS <u>shall</u> be warranted when:

1.  the scope of an action has been substantially increased;

2.  the intensity of environmental impacts will be increased;

3.  the mitigating measures originally planned will not be implemented; or

4.  new circumstances or evidence have brought to light different or likely increased environmental impacts not previously dealt with.

In granting summary judgment in favor of the City on this issue, the Circuit Court necessarily concluded, *inter alia*, that the City met its burden to demonstrate that there is no

7

genuine issue of material fact as to any of these alternatives and that the City is entitled to judgment as a matter of law.

The Amended Complaint appears to allege, in particular, facts purporting to support the second, third, and fourth alternatives.  For the purposes of this motion, we focus on only a portion of Friends' allegations, *i.e.*, that since the FEIS was approved, and the prohibition on access to the Haʻikū Stairs has been strictly enforced, the problems previously associated with the Haʻikū Stairs shifted from the Haʻikū Valley to the Moanalua side of the Koʻolau range, the "back way" to climb to the summit of the Haʻikū Stairs, creating secondary environmental and human impacts that were not anticipated or addressed in the FEIS.  The FEIS defines secondary effects as "those caused by the action (project) later in time or farther removed in distance, but are still foreseeable" and states that the removal of the Haʻikū Stairs "will not involve significant secondary effects."

The Amended Complaint alleges that, since the prohibition on access to the Haʻikū Stairs has been strictly enforced, the volume of hiker traffic on the Moanalua side has risen exponentially, reaching as many as a hundred climbers daily on weekends.  It alleges that the Moanalua trail is longer, more difficult, and far more dangerous, because the Haʻikū Stairs have handrails on both sides and regular, no-slip steps, with no possibility of getting lost.  It further alleges that the Moanalua trail follows uneven terrain along a heavily eroded ridgeline, with steep drops on both sides, with poor markings, and often muddy, slippery conditions.  The increase in hiker traffic has allegedly led to disturbances to Moanalua residents

8

that was not anticipated, as well as reduced hiker safety and more rescues. Importantly, the Amended Complaint alleges that rerouting of hikers from Haʻikū to Moanalua has had devastating environmental effects, as the Moanalua route has no metal stairs to climb and the steady trampling of hikers directly on the ground has "spurred massive erosion," with impact, *e.g.*, to rare endemic plants and the ecosystem that was not studied in the FEIS. For the ease of discussion, we will refer to this as the **Moanalua-side Impact.**

In assessing whether Friends are likely to prevail on the merits of their appeal from the Circuit Court's entry of summary judgment against them, we necessarily consider the supreme court's instructions for situations where – like here – the non-moving party bears the burden of proof at trial.

> This court has set forth a burden shifting paradigm for situations where the non-movant bears the burden of proof at trial:
>
>> The burden is on the party moving for summary judgment (moving party) to show the absence of any genuine issue as to all material facts, which, under applicable principles of substantive law, entitles the moving party to judgment as a matter of law. This burden has two components.
>>
>> First, the moving party has the burden of producing support for its claim that: (1) no genuine issue of material fact exists with respect to the essential elements of the claim or defense which the motion seeks to establish or which the motion questions; and (2) based on the undisputed facts, it is entitled to summary judgment as a matter of law. Only when the moving party satisfies its initial burden of production does the burden shift to the nonmoving party to respond to the motion for summary judgment and demonstrate specific facts, as opposed to general allegations, that present a genuine issue worthy of trial.
>>
>> Second, the moving party bears the ultimate burden of persuasion. This burden always remains with the moving party and requires the moving party to convince the court that no genuine issue of material fact exists and that the moving party is entitled to summary judgment as a matter of law.

9

> Thus, <u>where the non-movant bears the burden of proof at trial, a movant may demonstrate that there is no genuine issue of material fact by either: (1) presenting evidence negating an element of the non-movant's claim, or (2) demonstrating that the non-movant will be unable to carry his or her burden of proof at trial.</u>

<u>Ralston v. Yim</u>, 129 Hawaiʻi 46, 56-57, 292 P.3d 1276, 1286-87 (2013) (citations omitted; emphasis added).

Therefore, when the merits of this appeal are reached, the first issue to be addressed is whether the City, as the movant in the motion for summary judgment, satisfied its initial burden of production by either (1) presenting evidence negating an element of Friends' SEIS claim related to the Moanalua-side Impact, or (2) demonstrating that the Friends will be unable to carry their burden of proof at trial. See <u>id.</u>

The entirety of the City's argument on the Moanalua-side Impact in its motion for summary judgment states:

> Plaintiffs allege that security in Kāneʻohe has led to increased traffic in Moanalua, an increase in rescues, disturbance of Moanalua residents, and a decrease in trespassing. . . . The EIS also considered hikers' ingress from Moanalua and HFD rescues. <u>See</u>, <u>e.g.</u>, EIS at 73-74, 144 (removal of the Stairs would reduce, but not eliminate, access); <u>id.</u> at 216 (in considering partial removal: "Helicopter noise . . . would occur on occasion if hikers access Haʻikū Stairs from Moanalua Valley.")

The referenced portions of the FEIS state: at (.pdf) page 73, "Removing Haʻikū Stairs will . . . significantly reduce illegal access from Moanalua Valley"; at page 74, "The Proposed Action will end future illegal access up the ridgeline from Haʻikū Valley and Moanalua Valley;" and at page 216, that occasional rescue helicopter noise would occur from Moanalua-side hikers if Haʻikū Stairs were only partially removed.

We cannot conclude that the references to the FEIS in the City's summary judgment motion negated an element of Friends'

10

SEIS claim, *i.e.*, that the intensity of environmental impacts of the removal of the Haʻikū Stairs had and would be increased beyond what was considered in the FEIS, and/or new circumstances or evidence have brought to light different or likely increased environmental impact on the Moanalua side of the Koʻolau range. Nor is the City's evidence or argument sufficient to demonstrate that Friends will be unable to carry their burden of proof to establish the need for an SEIS.

In addition, in the Motion for Injunction Pending Appeal, Friends point to the Moanalua-side Impacts, both the increased safety risks and increased environmental impacts not dealt with in the FEIS. Friends' arguments are supported by multiple declarations, as is permitted by HRAP Rule 8.[2]

To be clear, we are not saying that Friends will ultimately prevail on their claims for relief in the Amended Complaint. Nor is this preliminary ruling binding on the merits panel that will fully review and analyze the parties' arguments after briefing is complete. However, we conclude that, with respect to this narrow issue, Friends have established at least a *prima facie* case that they are likely to succeed on the merits of their appeal from the order granting summary judgment in favor of the City.

---

[2] Although this testimonial evidence was not submitted in opposition to the City's summary judgment motion, we note two things. First, it appears that the City failed to carry its initial burden on this issue at summary judgment, and therefore, the burden never shifted to Friends to bring this evidence forward. Second, the City's motion was filed in lieu of an answer to the Amended Complaint, no deadlines had been set for discovery or naming of witnesses, no trial date was set, and Friends had requested that the Circuit Court continue the hearing or deny summary judgment pursuant to HRCP Rule 56(f) to allow them time to, *inter alia*, take discovery before the Circuit Court ruled that they would be unable to carry their burden of proof at trial. We do not reach the merits of any arguments related to these issues.

As we have concluded that Friends are likely to succeed on one of the issues on appeal, we decline to address the merits of Friends' other arguments contending that the Circuit Court erred in ruling that no SEIS was necessary, and that the City was entitled to summary judgment on Friends' estoppel and segmentation claims.

II.  THE BALANCING OF IRREPARABLE HARM

Friends principally argue that the balance of irreparable harm favors granting the requested injunctive relief because removing the Haʻikū Stairs cannot be undone.  Friends also point to and offer support for the irreversible damage to their stewardship mission to preserve the Haʻikū Stairs, their historic legacy, and the surrounding environment, noting that although the Haʻikū Stairs are now closed to the public, that has not always been the case, and they could be reopened in the future.  Friends also submit that even if the Haʻikū Stairs were not reopened, their loss would cause Friends other harms by permanently removing them from the Windward Oʻahu vista and destroying historic property.  Finally, Friends contend that the loss of their procedural rights to the process HEPA mandates is sufficient to establish irreparable injury.

The City does not dispute that removal of the Haʻikū Stairs cannot be undone, but points to other harms caused by leaving them in place, including the diversion of police resources, trespassers in the Haʻikū Valley residential area, and potential spread of invasive species.  At the hearing on the Motion for Injunction Pending Appeal, the City's attorney

12

represented that some modules of the Haʻikū Stairs have been detached or destabilized by the City's contractor such that a continued injunction disallowing further work on those modules pending this appeal poses a threat to public safety. Documents submitted by the City in opposition to Friends' request for injunctive relief indicate that such preliminary work began in May. On July 2, 2024, the City submitted the Declaration of Austin Nakoa, President of The Nakoa Companies, Inc., which described the current status of the removal work.

This court can provide no relief to Friends on this Motion for Injunction Pending Appeal for their most grievously-felt harm, *i.e.*, the potential permanent loss of the Haʻikū Stairs as a uniquely spectacular recreational resource. There is no legal recreational access to the Haʻikū Stairs at this time, and absent significant changes in the City's stance, a way forward may prove illusory.

We nevertheless conclude that the balance of irreparable harm strongly favors Friends on this Motion for Injunction Pending Appeal. The demolition and removal of the Haʻikū Stairs cannot be undone. The procedural rights and protections offered by Hawaii's strong environmental laws and regulations are significant, and Friends' ability to make its arguments on the merits, *e.g.*, on the SEIS issue discussed above, should not be rendered moot. Cf. Kaleikini v. Yoshioka, 128 Hawaiʻi 53, 71, 283 P.3d 60, 78 (2012) (discussing importance of procedural rights). While the other harms asserted by Friends may be less compelling, they support the balancing in favor of Friends.

13

We also give weight to the harms identified by the City, particularly the potential public safety concerning portions of the Haʻikū Stairs and the Moanalua Saddle Stairs that have been fully or partially detached. We are able to address this by limiting the injunctive relief, to mitigate the public safety issue with respect to the detached or partially detached Haʻikū Stairs and Moanalua Saddle Stairs. The necessity for additional police resources to maintain strict enforcement of trail access and address neighborhood trespass concerns for the period pending this appeal is given somewhat less weight, because it appears that these public services would be required for a period of time in any case.[3] This court can take certain steps to try to move this case along toward a decision on the merits, whereas there is nothing we can do to mitigate the permanent demolition of the Haʻikū Stairs.

III. <u>PUBLIC POLICY</u>

There are strong public policy arguments on both sides of this issue. Friends' public policy arguments are closely tied to their arguments concerning irreparable harm. The City argues that its action to remove the Haʻikū Stairs has the support of the elected representatives of City government and points to the public costs associated with a delay in the demolition. The public policy arguments tend to favor the City, particularly as to the decision-making authority of elected officials. However, these public policy arguments could be made in most any case

---

[3] It appears that the City's strict access restrictions will also help mitigate introduction of invasive plant species by hikers for the limited period of this injunction.

14

where a citizen or group of citizens seeks to enforce environmental or other rights against a government entity and, under the circumstances of this case, they do not outweigh the other factors of the Stop Rail Now test discussed above.

IV. CONCLUSION

For the reasons set forth above, the Motion for Injunction Pending Appeal is granted in part as follows:

IT IS HEREBY ORDERED that the City is enjoined from further detaching, demolishing, or removing all or any part of the Haʻikū Stairs and/or Moanalua Saddle Stairs — directly or indirectly through its agents, representatives, employees, agencies, and/or contractors — pending disposition of this appeal.

IT IS FURTHER ORDERED that, notwithstanding the foregoing injunction, the City may remove the approximately 60 stair modules of Moanalua Saddle Stairs and approximately 10-15 stair modules of the Haʻikū Stairs that were detached by the City's contractor prior to the entry of this court's June 20, 2024 Order for Temporary Injunction.[4]

IT IS FURTHER ORDERED that Friends' request for other forms of injunctive relief (concerning contracts and payments) is denied, and the City's request for a bond in excess of $1,000,000 is denied.

In addition, IT IS HEREBY ORDERED that, pursuant to HRAP Rule 2, the deadline to file the Opening Brief is hereby

---

[4] This order does not prohibit the City from securing other modules to the extent possible, as referenced in the July 2, 2024 Declaration of Austin Nakoa.

15

advanced from August 19, 2024, to August 5, 2024;[5] the deadline to file the Answering Brief is advanced to September 3, 2024; the deadline to file the Reply Brief is advanced to September 10, 2024; and the provisions of HRAP Rule 29 are suspended. Motions for extensions of time to file briefs shall be made at least 5 days prior to the due date of the Opening Brief or Answering Brief, and at least 2 days prior to the due date of the Reply Brief, and will be approved by a judge upon a showing of extraordinary circumstances.

This Order for Injunction Pending Appeal remains subject to the further order of this court.

DATED: Honolulu, Hawaiʻi, July 3, 2024.

/s/ Katherine G. Leonard
Acting Chief Judge

/s/ Sonja M.P. McCullen
Associate Judge

HIRAOKA, J., CONCURRING IN PART AND DISSENTING IN PART

I concur with the majority's Stop Rail Now analysis and the portions of the order (1) enjoining the City from detaching, demolishing, or removing the modules of the Haʻikū Stairs and Moanalua Saddle Stairs that were not fully or partially detached when we issued our Order for Temporary Injunction on June 20, 2024, and (2) allowing the City to remove those modules that were fully detached as of June 20, 2024. But I respectfully dissent from the majority's enjoining the City from further detaching,

_____

[5] The original deadline was extended by the court after a court reporter requested additional time to complete a transcript. However, that transcript has been filed. Briefing of this appeal, without undue delay, will allow the merits panel to be assigned and for the case to be expeditiously decided on the merits, mitigating concerns raised by the City.

16

demolishing, or removing the modules that were partially detached as of June 20, 2024.

"[A] prohibitory injunction requires that a party cease certain conduct *in order to preserve the status quo*." Wahba, LLC v. USRP (Don), LLC, 106 Hawaiʻi 466, 472, 106 P.3d 1109, 1115 (2005) (emphasis added).  The status quo Friends seek to preserve — the condition of the Haʻikū Stairs and Moanalua Saddle Stairs before the City's contractor began its work — no longer exists. The City contracted with The Nakoa Companies on June 29, 2023. Friends filed the action below on August 8, 2023, but did not seek a restraining order or preliminary injunction.  Friends first moved the Circuit Court for an injunction on May 31, 2024, after deconstruction had begun.  But Friends had already filed a notice of appeal.  The Circuit Court believed it no longer had jurisdiction over the case.  Friends then moved this court for an injunction on June 10, 2024.  By the time we issued the Order for Temporary Injunction on June 20, 2024 — almost a year after the City awarded the contract — the contractor had fully or partially detached some stair modules in preparation for their removal.

According to Austin Nakoa's declaration, "[i]n their current state, the modules are extraordinarily dangerous for hikers. . . . This is particularly true for the 70-75 modules that have been fully detached, but it is also true for those modules that have been partially detached[.]"  The majority "does not prohibit the City from securing [the partially detached] modules to the extent possible, as referenced in" Nakoa's declaration.  Under the circumstances, that looks like a mandatory injunction "which goes well beyond the status quo[,] is

17

particularly disfavored, and should not be issued unless the facts and law *clearly* favor the moving party." Wahba, LLC, 106 Hawaiʻi at 472, 106 P.3d at 1115 (cleaned up) (emphasis added). In my view, Friends have not made such a showing.

Going back to secure the partially detached modules could inequitably require the City to incur more costs. The remedial work described in Nakoa's declaration seems to be outside the scope of the City's contract; it may entail an additive change order for labor, materials, and helicopter operations, among other things. Any additional costs will ultimately be borne by Oʻahu taxpayers.

Under all these circumstances, particularly Friends' belated attempts to obtain injunctive relief, I would allow the City to remove the partially detached modules. That would preserve the status quo ante June 20, 2024 without additional cost to the City, and further the public policy of promoting public safety and minimizing the City's potential liability to those who persist in illegally hiking the Haʻikū Stairs.

DATED:  Honolulu, Hawaiʻi, July 3, 2024.

/s/ Keith K. Hiraoka
Associate Judge